UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TYRELL HENDERSON,

                  Plaintiff,

v.

UNKNOWN BOROWICZ et al.,

                  Defendants.

_____/

Case No. 1:24-cv-166

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has filed a motion for leave to proceed *in forma pauperis*. (ECF No. 2.) The Court will grant Plaintiff's motion because it reasonably appears that paying the cost of the filing fee in one lump sum would impose an undue financial hardship. *Prows v. Kastner*, 842 F.2d 138, 140 (5th Cir. 1988).

Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.) This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under

the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss the following claims for failure to state a claim: (1) Plaintiff's official capacity claims; (2) Plaintiff's First Amendment retaliation claims premised upon amendment of the misconduct report; (3) Plaintiff's Fourth Amendment claims; and (4) Plaintiff's Fourteenth Amendment claims. The following personal capacity claims remain: (1) Plaintiff's First Amendment retaliation claims against Defendants alleging that Defendant Borowicz assaulted him and Defendant Wihelm failed to intervene because Plaintiff threatened to file a grievance; (2) Plaintiff's Eighth Amendment excessive force claim against Defendant

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Borowicz; and (3) Plaintiff's Eighth Amendment failure to intervene claim against Defendant Wihelm.

**Discussion**

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which he complains, however, occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues MCF Corrections Officers Unknown Borowicz and Unknown Wihelm in their official and personal capacities.

Plaintiff alleges that on March 13, 2023, he was physically assaulted by Defendant Borowicz. (Compl., ECF No. 1, PageID.5.) According to Plaintiff, Defendant Wihelm "[sat] there and watched it happen." (*Id.*) Plaintiff alleges that he has "suffered from back and neck pains since that day." (*Id.*) Plaintiff spoke to healthcare staff, who told Plaintiff that "the pain would go away [and that he should] just take ibuprofen for it." (*Id.*)

Plaintiff has attached various exhibits to his complaint that provide more context for his allegations.[2] In an affidavit, Plaintiff suggests that, before the assault occurred, Defendants were

---

[2] The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the district court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint.

harassing Plaintiff as he was entering his cell. (ECF No. 1-1, PageID.10.) Plaintiff told them that

he would be filing a grievance for harassment. (*Id.*) He states that Defendants then began to

threaten and assault him. (*Id.*) Plaintiff "told them to stop and leave them alone. They did not."

(*Id.*)

Plaintiff filed a grievance about the assault. (Compl., ECF No. 1, PageID.3.) He claims that

after he filed the grievance,[3] "staff retaliated by changing the misconduct that staff wrote on him."

(*Id.*) Plaintiff has attached a copy of the referenced misconduct report to his complaint. On March

13, 2023, Defendant Borowicz issued a class I misconduct to Plaintiff, charging him with

threatening behavior. (ECF No. 1-12, PageID.36.) Defendant Borowicz wrote that he went to

Plaintiff's cell to get Plaintiff's ID card. (*Id.*) Plaintiff "stepped toward [Defendant Borowicz] with

his fists clenched at waist level with his teeth bared." (*Id.*) Defendant Borowicz tried to shut the

cell door, but Plaintiff "grabbed the door and pulled it away . . . and continued to advance." (*Id.*)

Defendant Borowicz reported that he pushed Plaintiff back into the cell because he feared for his

safety. (*Id.*) Defendants ordered that Plaintiff submit to restraints, and Plaintiff complied. (*Id.*) A

note on the misconduct report indicates that on March 14, 2023, the misconduct ticket was re-

reviewed with Plaintiff after the correct charge—assault and battery upon staff—was added. (ECF

No. 1-13, PageID.38.)

Plaintiff has also attached a copy of the hearing report to his complaint. Plaintiff appeared

before non-party Administrative Law Judge (ALJ) Jollands on March 22, 2023. (ECF No. 1-16,

PageID.44.) ALJ Jollands found Plaintiff guilty of both threatening behavior and assault and

---

The Court will generally not accept as true statements made by others in the documents Plaintiff
attaches to the complaint.

[3] Plaintiff has also attached the grievance to his complaint. (Grievance, ECF No. 1-6, PageID.21.)

battery. (*Id.*) ALJ Jollands sanctioned Plaintiff with 15 days' toplock[4] and 50 days' loss of privileges. (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First, Fourth, Eighth, and Fourteenth Amendment rights. (Compl., ECF No. 1, PageID.5.) He seeks $1.6 million in damages. (*Id.*, PageID.6.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

---

[4] "Toplock" is a restriction of the prisoner to his own cell, room, or bunk and bunk area. *See* MDOC Policy Directive 03.03.105, ¶¶ OOO–QQQ (eff. Apr. 18, 2022).

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Official Capacity Claims

As noted above, Plaintiff sues Defendants in both their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*,

803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks only damages as relief. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's official capacity claims against Defendants in their entirety.

## B.    Personal Capacity Claims

### 1.    First Amendment Claims

Plaintiff suggests that Defendants retaliated against him, in violation of his First Amendment rights, in two ways: (1) by assaulting him after Plaintiff threatened to file a grievance concerning Defendants' harassment; and (2) amending the misconduct ticket after Plaintiff filed a grievance about the assault.

In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff engaged in protected conduct when he threatened to file a grievance about Defendants' harassment, and when he filed a grievance about the assault. *See Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009); *Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Moreover, an assault by prison staff can certainly qualify as adverse action, as can the receipt of a misconduct ticket. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). The Court, therefore, will consider whether Plaintiff has alleged sufficient facts regarding retaliatory motive for each asserted adverse action below.

### a.    Assault/Use of Force

Plaintiff avers that he was assaulted by Defendant Borowicz on March 13, 2023, and that Defendant Wihelm "[sat] there and watched it happen." (Compl., ECF No. 1, PageID.5.) He states that the assault happened after Plaintiff told Defendants that he "was going to file a grievance for harassment." (ECF No. 1-1, PageID.10.) Plaintiff's grievance about the incident provides more facts about the alleged assault. (ECF No. 1-6, PageID.21.) In that grievance, Plaintiff stated that when he turned to get back into his bunk, Defendant Borowicz "rammed [Plaintiff's] body into the steel [ladder] of the bunk." (*Id.*) Plaintiff also stated that Defendant Borowicz pulled his hair and caused his neck to twist. (*Id.*) When Defendant Borowicz released Plaintiff, Plaintiff's "head jerked back and hit the solid steel." (*Id.*)

These allegations, however, are not the only facts Plaintiff has presented to the Court. Plaintiff has attached the class I misconduct hearing report relating to the incident to his complaint. The ALJ who conducted Plaintiff's misconduct hearing considered the misconduct report, the hearing investigation report, a memorandum prepared by Defendant Wihelm, witness statements from two inmates, video surveillance, and a video summary memorandum. (ECF No. 1-16,

PageID.44.) After reviewing the evidence, the ALJ found Plaintiff guilty of threatening behavior

and assault and battery and set forth the following detailed reasons for such findings:

> THREATENING BEHAVIOR: Per MDOC PD 03.03.105, Attachment A, Threatening Behavior is defined as words, actions or other behavior which expresses an intent to injure or physically abuse another person. One of the examples listed in the policy definition includes: threat made to a third person.
>
> The officer reports he went up to cell 1-218 to get Henderson's ID card. Prisoner stepped toward him with his fists clenched at waist level with his teeth bared. The officer tried to shut the cell door but prisoner grabbed the door and pulled it away from him and continued to advance toward the officer. Fearing for his safety, he pushed prisoner back into the cell. Prisoner was restrained without further incident.
>
> Prisoner admits he was in conversation with the officer and officer was in his doorway while he was in his cell, but denies he clenched his fists, bared his teeth, and advanced toward the officer. While prisoner's assertions are considered, evidence is more supportive of the charge. First, the two were in a conversation in his doorway and in his cell, so about 2 to 4 feet apart. Given their close proximity to each other, the officer could logically see what prisoner was doing, i.e., advancing toward him, clenching his fists, baring his teeth. Second, while prisoner denies being mad at the officer, his body language shows him waiving his arms in a jerky motion to his sides with a paper in his hand, as if he was trying to make a point as well as pacing back and forth between his cell and the railing while having a strong conversation with the officer who was down on base at the time. This waiving his arms and pacing while speaking was done in a common manner one does when excited and upset. It is plausible his frustration at having to get the officer his ID manifested itself into the above mentioned threatening actions. Third, whether the officer did not pull his tazer or push his PPD is just one piece of evidence to weigh and does not disprove the charge and C/O Wihelm and RUM West were present. Fourth, advancing toward the officer, clenching his fists, and baring his teeth are actions of threatening behavior that indicated he intended to injure or physically abuse the officer. His actions alone support the charge. Finally, there is no evidence to support the officer falsified this report.
>
> Based on the above, I find the evidence is more supportive prisoner expressed an intent to injure the officer by advancing toward him, clenching his fists and baring his teeth. THE CHARGE IS UPHELD.
>
> ASSAULT AND BATTERY: Per MDOC PD 03.03.105, Attachment A, Assault & Battery is defined as intentional, non-consensual touching of another person done in anger or with the purpose of abusing or injuring another. Physical resistance or physical interference with an employee. Injury is not necessary, but contact is.
>
> Prisoner admits he was in his cell, the officer was at the door, and prisoner had his hands on the door. Video shows Officers Borowicz and Wihelm go upstairs to cell

10

1-218, C/O Borowicz reaches his arm forward and steps forward and then steps back and then steps into the cell. The officer's action of reaching forward indicates he was reaching for the door, his stepping back supports he was closing the door, and it's plausible the officer's moving forward is consistent with prisoner pulling on the door while the officer was still holding onto it. C/O Wihelm also testified he saw prisoner pull the door away from C/O Borowicz.

In [h]is written statement, prisoner claims the officer assaulted him. This is the subject of a grievance and provides no defense for prisoner's misconduct.

While prisoner did not make physical contact with C/O Borowicz, he was pulling on the door the same time the officer was trying to close it and it's no different than pulling on the officer. I find prisoner's actions of pulling on the door at the same time the officer did was intentional and non-consensual as it is highly unlikely the officer would consent to having the prisoner pull on him. Pulling on a staff member is an assault and battery. Pulling on the door in this manner while the officer tried to close it is physically abusive. I find prisoner's actions were done intentionally and without consent for the purpose of physically abusing C/O Borowicz. Evidence supports the charge. THE CHARGE IS UPHELD.

(ECF No. 1-16, PageID.45–46.)

Under certain circumstances, the facts stated in the ALJ's report have preclusive effect in this Court. *See Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013). In *Peterson*, the Sixth Circuit considered whether a hearing officer's factual finding that the plaintiff grabbed the defendant's hand should be accorded preclusive effect on the plaintiff's Eighth Amendment claim. Peterson claimed that Corrections Officer Johnson started a scuffle by reaching into Peterson's cell to pull Peterson out and assault him. Corrections Officer Johnson claimed that Peterson initiated the scuffle by grabbing Johnson's hand and pulling him into the cell. *Id*. at 908. Corrections Officer Johnson wrote a major misconduct report against Peterson for assaulting and battering Johnson; Peterson defended by claiming that Johnson was the assaulter and batterer. The hearing officer heard testimony, reviewed affidavits, and reviewed a video of the incident. The hearing officer concluded that Peterson was guilty of assault and battery and that Corrections Officer Johnson did not start the melee. In that sense, Plaintiff's case is quite similar to Peterson's.

11

In resolving the question, the court looked to *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), which explained that "'when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. at 799 (internal citation omitted). The Sixth Circuit held that the *Elliott* Court identified four criteria for according preclusive effect to the administrative factual findings: (1) whether the state agency acted in a judicial capacity; (2) whether the hearing officer resolved a disputed fact that was properly before her; (3) whether the party to be precluded had an adequate opportunity to litigate the factual dispute; and (4) if the other three criteria are satisfied, the finding is given the same preclusive effect as it would be given in state courts. *Peterson*, 714 F.3d at 912–13. After applying the four *Elliott* criteria to the MDOC's major misconduct hearing process, the Sixth Circuit concluded that Michigan courts would grant preclusive effect to the hearing officer's finding that the plaintiff grabbed the defendant's hand. *Id.* at 917.

The Sixth Circuit subsequently qualified the *Peterson* holding in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014). In *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), the Sixth Circuit considered all of those authorities and further clarified the limitations of the preclusion doctrine, as follows:

> In *Peterson*, the Court considered, as a matter of first impression, whether a hearing officer's factual determination at a Michigan major misconduct hearing has preclusive effect in litigation brought by a prisoner under § 1983. *Id.* at 908, 911. The Court concluded that, because all four requirements were met, the "hearing officer's factual finding that [the prisoner] was the one who grabbed [the officer's] hand precludes a contrary finding in federal court." *Id.* at 917. In *Roberson v. Torres*, the Court considered the same issue, and identified the four requirements listed above. 770 F.3d 398, 403–04 (6th Cir. 2014). The Court said that Peterson does not mean that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." *Id.* at 404.

"*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id*.

> Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.

*Id*. at 404–05 (internal citations and quotation marks omitted). The Court declined to decide the preclusion question[ ] and remanded the case to the district court to consider the argument for the first time. *Id*. at 405. The Court instructed the district court to "give particular attention to the fairness and accuracy of the factual findings made by the major-misconduct hearing officer." *Id*. The Court advised that "[n]umerous inquiries may be relevant to the district court's analysis," like "why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either [the prisoner] or [the officer]." *Id*. at 405.

*Maben*, 887 F.3d at 259.

Here, although the factors identified in *Peterson*, *Roberson*, and *Maben* support giving the ALJ's factual findings preclusive effect, the Court cannot conclude that Plaintiff's retaliation claims against Defendants Borowicz and Wihelm are foreclosed by those factual findings. Although the ALJ noted that Plaintiff was having a "strong conversation" with Defendants, the ALJ did not make any findings regarding the contents of that conversation. Thus, it is entirely plausible that Plaintiff threatened to file a grievance during that conversation. Furthermore, the hearing officer acknowledged that Defendant Borowicz pushed Plaintiff back into his cell and that Defendant Borowicz stepped into the cell. The ALJ, however, did not make any factual findings about what occurred inside the cell after Defendant Borowicz stepped inside. Whether or not Defendant Borowicz used excessive force against Plaintiff inside the cell would not necessarily have to be resolved to determine whether Plaintiff had committed the threatening behavior and assault and battery that occurred prior to Defendant Borowicz entering the cell.

Taking Plaintiff's allegations as true, it is entirely plausible that during the incident, Plaintiff threatened to file a grievance, Defendant Borowicz assaulted Plaintiff inside the cell, and Defendant Wihelm failed to intervene to stop the assault. Accordingly, at this early stage of proceedings, the Court concludes that these allegations suffice to set forth First Amendment retaliation claims against Defendants.

### b.    Amendment of Misconduct Ticket

Plaintiff avers that, after he filed a grievance against Defendants regarding the assault and use of force, they amended the misconduct ticket to add an assault and battery charge. However, it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotations omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (holding that "bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive Section 1915A screening (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Here, Plaintiff's exhibits suggest that the misconduct ticket was amended to add the assault and battery charge on March 14, 2023. (ECF No. 1-13, PageID.38.) His exhibits also suggest that he did not file his grievance about the assault/use of force until March 16, 2023. (ECF No. 1-6, PageID.21.) That fact alone is fatal to Plaintiff's retaliation claim—he engaged in the protected

14

conduct (filing a grievance) *after* the alleged adverse action. Moreover, Plaintiff merely alleges the ultimate fact of retaliation in this matter and provides no facts to suggest that Defendants amended the misconduct ticket because of any of Plaintiff's protected conduct. Accordingly, Plaintiff cannot maintain a First Amendment retaliation claim against Defendants premised upon the amendment of the misconduct ticket.

In sum, the Court will dismiss Plaintiff's First Amendment retaliation claim against Defendants premised upon the amendment of the misconduct ticket. However, Plaintiff's First Amendment retaliation claims against Defendants alleging that Defendant Borowicz assaulted him, and Defendant Wihelm failed to intervene because Plaintiff threatened to file a grievance will proceed.

### 2.     Fourth Amendment Claims

Plaintiff vaguely asserts that Defendants violated his Fourth Amendment rights but provides no explanation for this assertion. To the extent Plaintiff believes that the alleged assault violated the Fourth Amendment, he cannot maintain such a claim, because the Fourth Amendment's prohibition against unreasonable seizures applies only to individuals who were free at the time of the incident. *See Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) (noting that the Fourth Amendment protects against the use of excessive force against someone "in the course of an arrest, investigatory stop, or other 'seizure'"); *Gambrel v. Knox Cnty.*, 25 F.4th 391, 403 (6th Cir. 2022) (noting that the Fourth Amendment prohibits the use of "gratuitous violence" against a suspect who poses no danger to police). Because Plaintiff is a convicted prisoner, the Eighth Amendment's ban on cruel and unusual punishment governs his excessive force claim, as discussed below. *See Wilkins v. Gaddy*, 559 U.S. 34, 37–39 (2010).

Moreover, to the extent Plaintiff takes issue with the fact that Defendants approached his cell, the Supreme Court has considered and rejected a Fourth Amendment claim regarding a prison official's search of a prisoner's cell. *See Hudson v. Palmer*, 468 U.S. 517, 519, 535 (1984). The *Hudson* Court noted that a search of a prisoner's cell does not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28.

Accordingly, for the reasons set forth above, Plaintiff's Fourth Amendment claims against Defendants will be dismissed.

### 3.     Eighth Amendment Claims

As previously noted, Plaintiff alleges that on March 13, 2023, Defendant Borowicz assaulted him while Defendant Wihelm "[sat] there and watched it happen." (Compl., ECF No. 1, PageID.5.) Plaintiff's grievance about the incident provides more facts about the alleged assault. (ECF No. 1-6, PageID.21.) In that grievance, Plaintiff stated that when he turned to get back into his bunk, Defendant Borowicz "rammed [Plaintiff's] body into the steel [ladder] of the bunk." (*Id.*) Plaintiff also stated that Defendant Borowicz pulled his hair and caused his neck to twist. (*Id.*) When Defendant Borowicz released Plaintiff, Plaintiff's "head jerked back and hit the solid steel." (*Id.*) The Court construes Plaintiff's complaint to assert an Eighth Amendment excessive force claim against Defendant Borowicz and an Eighth Amendment failure to intervene claim against Defendant Wihelm.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous", nor may it contravene

society's "'evolving standards of decency.'" *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Id.* at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Not every shove or restraint, however, gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011). Furthermore, an officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273

F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. The Court asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

As discussed above in Part II.B.1, the ALJ concluded that Plaintiff was guilty of assault and battery for pulling the cell door when Defendant Borowicz was holding the door. Plaintiff's allegations, however, suggest that Defendant Borowicz assaulted him inside of the cell, and that Defendant Wihelm failed to intervene to stop that assault. As noted above, the ALJ did not make any factual findings regarding what occurred inside the cell, and, indeed, the ALJ acknowledged Plaintiff's claim of assault, noting that it was "the subject of a grievance and provide[d] no defense

for prisoner's misconduct." (ECF No. 1-16, PageID.46.) A claim for excessive force regarding an assault that occurred inside the cell is not precluded by the ALJ's conclusions that led to finding Plaintiff guilty of assault and battery. Accordingly, at this early stage of proceedings, taking Plaintiff's allegations as true, the Court concludes that Plaintiff has sufficiently set forth an Eighth Amendment excessive force claim against Defendant Borowicz, as well as an Eighth Amendment failure to intervene claim against Defendant Wihelm.

### 4.      Fourteenth Amendment Claims

Plaintiff also vaguely asserts that Defendants violated his Fourteenth Amendment rights but again does not explain how. To the extent Plaintiff contends that the alleged assault violated his Fourteenth Amendment rights, he cannot maintain such a claim. As noted above, Plaintiff is a convicted inmate, and the Fourteenth Amendment's Due Process Clause protects against the use of excessive force for pretrial detainees. *See Kingsley v. Hendrickson*, 576 U.S. 389, 392–93 (2015); *see also Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 727 (6th Cir. 2022), *reh'g en banc denied*, 35 F.4th 1051 (6th Cir. 2022). Given Plaintiff's assertion that the misconduct ticket was rewritten after he filed a grievance concerning the alleged assault, the Court construes Plaintiff's reference to the Fourteenth Amendment to assert due process claims related to his misconduct proceedings.

#### a.      Procedural Due Process

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct

is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id.* ¶ DDDD.

Plaintiff does not allege that the class I misconduct had any effect on the duration of his sentence—and he cannot. Plaintiff is serving sentences imposed in 2010 for crimes committed in 2010. *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis 2profile.aspx?mdocNumber=810508 (last visited Feb. 27, 2024). A prisoner like Plaintiff, who is serving indeterminate sentences for offenses committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011). Therefore, Plaintiff's class I misconduct convictions for threatening behavior and assault and battery had no impact on the duration of Plaintiff's sentence.

Furthermore, Plaintiff does not allege any facts suggesting that the misconduct convictions resulted in an "atypical and significant hardship." *See Sandin*, 515 U.S. at 487. The hearing report indicates that Plaintiff was sanctioned with 15 days' toplock and 50 days' loss of privileges. (ECF No. 1-16, PageID.44.) Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E. Where a stay longer than 30 days in segregation is not

considered an atypical or significant hardship, *see Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010), it defies logic to suggest that the lesser penalties of loss of privileges and toplock for that duration could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a fourteen-day loss of privileges sanction did not implicate the due process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Miles v. Helinski*, No. 20-1279, 2021 WL 1238562, at *4 (6th Cir. Jan. 29, 2021) (five days' toplock and five days' loss of privileges fails to state a due process claim); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) (concluding that "thirty days' loss of privileges . . . did not implicate a protected liberty interest"); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (thirty days' toplock and thirty days' loss of privileges "does not amount to an 'atypical and significant hardship'").

Plaintiff fails to allege any facts showing that he was subjected to conditions which would implicate a liberty interest as a result of the rewritten misconduct ticket. Plaintiff's Fourteenth Amendment procedural due process claims will, therefore, be dismissed.

### b. Substantive Due Process

Plaintiff's reference to the Fourteenth Amendment may also assert a substantive due process claim regarding the rewritten misconduct ticket. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting

evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff's complaint, however, has no allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham*, 490 U.S. at 394) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments apply to Plaintiff's claims for relief. Consequently, any intended substantive due process claims will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the following claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): (1) Plaintiff's official capacity claims; (2) Plaintiff's First Amendment retaliation claims premised upon amendment of the misconduct report; (3) Plaintiff's Fourth Amendment claims; and (4) Plaintiff's Fourteenth Amendment claims. The following personal capacity claims remain: (1) Plaintiff's First Amendment retaliation claims against Defendants alleging that Defendant Borowicz assaulted him and Defendant Wihelm failed to intervene because Plaintiff threatened to file a grievance; (2) Plaintiff's Eighth

Amendment excessive force claim against Defendant Borowicz; and (3) Plaintiff's Eighth Amendment failure to intervene claim against Defendant Wihelm.

An order consistent with this opinion will be entered.


Dated:   March 27, 2024                            /s/ Sally J. Berens
                                                   SALLY J. BERENS
                                                   United States Magistrate Judge